UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Old Republic Insurance Company,

Plaintiff,

v.

Thomas E. Erickson, Personal Representative
of the Estate of Charles William Erickson, Deceased;
Quintessence Air Service, LLC; and Thomas Pearson,
Trustee for the Next of Kin of Kathryn Wall Pearson,
Deceased, and as Father and Natural Guardian of Grace
and Elizabeth Pearson,

Defendants.

Civ. No. 04-1398 (JNE/RLE)
ORDER

---

Michael C. Lindberg, Esq., Johnson & Lindberg, P.A., appeared for Plaintiff Old Republic Insurance Company.

Richard Snyder, Esq., Fredrikson & Byron, P.A., appeared for Defendants Thomas E. Erickson, Personal Representative of the Estate of Charles William Erickson, Deceased; and Quintessence Air Service, LLC.

John M. Dornik, Esq., Mackenzie & Dornik, P.A., appeared for Defendant Thomas Pearson, Trustee for the Next of Kin of Kathryn Wall Pearson, Deceased, and as Father and Natural Guardian of Grace and Elizabeth Pearson.

Mike Hatch, Esq., Daniel Goldberg, Esq., and Martin Carlson, Esq., State of Minnesota, Office of the Attorney General, appeared for *amicus curiae* State of Minnesota.

---

This case arises out of an aviation accident that occurred on August 28, 2003. On that day, Charles Erickson was piloting a twin-engine 1977 Beechcraft Baron 58P aircraft (Beech Baron) near Grand Marais, Minnesota, when it crashed. The crash killed Erickson and the front-seat passenger, Kathryn Pearson, and severely injured the back-seat passengers, Pearson's minor daughters, Grace and Elizabeth. At the time of the accident, the Beech Baron was covered by an insurance policy issued by Phoenix Aviation Managers, Inc., on Old Republic Insurance

1

Company's behalf.[1]  Old Republic brought this action seeking a declaration that the policy is void and affords no coverage to Defendants because Erickson made material misrepresentations when applying for insurance on the Beech Baron.

Erickson began to seek insurance on the Beech Baron on behalf of Quintessence Air Service, LLC, the owner of the aircraft, in September 2002.  During his search, he worked with John Weber from NationAir Insurance Agencies, Inc., a company that sells and services aviation insurance.  Weber submitted a "Quote Request" to seven insurance companies for Erickson and Quintessence regarding the Beech Baron.  The Quote Request indicated that Erickson had not suffered any "Losses/Violations" within the last five years.

On September 24, 2002, approximately one week after Weber submitted the requests, Phoenix's underwriter, Steve Knowle, faxed back a quotation for insurance on the Beech Baron. The quote was accepted and coverage was bound effective October 4, 2002.  On October 17, 2002, Erickson filled out and signed a formal application at Weber's request.  In that application, Erickson represented that Quintessence had not had any aircraft/aviation losses/claims during the last three years and that none of the pilots listed in the application, including Erickson, had ever been involved in any accident or incident.  In truth, however, Erickson had damaged a single-engine aircraft during a landing earlier that summer.  On June 6, 2002, Erickson had rented a Mooney M20J (Mooney) from Northland Aircraft Services.  While landing the Mooney, he experienced difficulties with cross-winds, and the wing of the aircraft struck the ground.  No one was injured, but the aircraft was damaged such that Old Republic, the aircraft's insurer, deemed the loss total and paid Northland the policy limit.  Old Republic now moves for summary

---

[1]      Phoenix was Old Republic's managing general agent and wholly-owned subsidiary; it was authorized to underwrite aviation insurance for Old Republic.

judgment on its claim that the insurance policy is void as a result of Erickson's failure to disclose his June 6, 2002, accident when applying for insurance on the Beech Baron.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Old Republic asserts that Erickson falsely stated during the insurance application process that he had no prior accidents, incidents, claims, losses, or violations, and that those false statements trigger the policy's "voidance for fraud" provision and Minn. Stat. § 60A.08, subd. 9 (2004). The insurance policy states:

> This policy shall be void if the Named Insured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof or in case of any fraud, attempted fraud or false swearing by the Named Insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss.

Minnesota Statutes § 60A.08, subd. 9, provides in relevant part:

> No oral or written misrepresentation made by the assured, or in the assured's behalf, in the negotiation of insurance, shall be deemed material, or defeat or

avoid the policy, or prevent its attaching, unless made with intent to deceive and defraud, or unless the matter misrepresented increases the risk of loss.

Defendants oppose Old Republic's motion on the ground that there are genuine issues of material fact regarding whether Erickson made a material misrepresentation to Phoenix. In the alternative, Defendants and the *amicus curiae* argue that Minnesota law precludes Old Republic from pursuing post-accident rescission. Thomas Erickson, Personal Representative of the Estate of Charles Erickson, and Quintessence argue that Minnesota law precludes aviation insurers from pursuing post-accident rescission as to any individual injured in an aviation accident. Thomas Pearson, Trustee for the Next of Kin of Kathryn Pearson and as Father and Natural Guardian of Grace and Elizabeth Pearson, asserts that Minnesota law precludes aviation insurers from pursing post-accident rescission as to innocent third-party tort victims.

The Court turns first to Defendants' argument that there are genuine issues of material fact as to whether Erickson made a material misrepresentation to Phoenix. To prevail on a claim that an insurance policy should be rescinded as a result of a misrepresentation, an insurer must demonstrate either that the insured made a misrepresentation with intent to deceive and defraud, or the matter misrepresented increases the risk of loss. Minn. Stat. § 60A.08, subd. 9. The insurer must also demonstrate that it reasonably relied on that misrepresentation when making its decision to issue an insurance policy. *See Ins. Co. of Penn. v. Hoffman*, 814 F. Supp. 782, 788 (D. Minn. 1993) (holding alleged misrepresentation was not material because the insurer knew the true facts); *Preferred Risk Mut. Ins. Co. v. Anderson*, 152 N.W.2d 476, 482 (Minn. 1967) (holding misrepresentation was not material because insurer neither relied on it nor suffered detriment thereby). "The burden of proof on all issues of fact relative to the alleged misrepresentation is on the insurer." *Proprietors Ins. Co. v. Nw. Nat'l Bank of Minneapolis*, 374 N.W.2d 772, 776 (Minn. Ct. App. 1985).

In this case, Defendants have proffered evidence that Old Republic was the insurer for both aircraft—the Beech Baron and the Mooney—that Erickson damaged.  Phoenix's claims adjuster, Matthew Teeuwen, investigated the June 6, 2002, incident that gave rise to the total loss of the Mooney.  In so doing, he learned that Erickson was piloting that plane when the accident occurred.  In connection with his investigation, Teeuwen obtained a statement from Erickson, as well as copies of Erickson's pilot's license, pilot certificate number, driver's license, and medical certificate.  Phoenix maintained these records in its files at its headquarters in Atlanta, Georgia.

Defendants have also come forward with evidence that Steve Knowle, one of Phoenix's underwriters for the Quintessence policy, knew of the June 6, 2002, accident.  In July 2002, just three months before Erickson submitted his allegedly false application for insurance, Northland—the company from whom Erickson rented the Mooney aircraft—sought renewal of its aviation insurance policy.  Knowle participated in the underwriting of Northland's renewal; he increased Northland's premium rates by 30%.  At his deposition, he testified that when he was determining Northland's rates, he had access to information concerning Erickson's June 6, 2002, accident, and that he likely recommended the 30% rate increase on the Northland policy because of the accident.

Based on the foregoing evidence, a reasonable factfinder could conclude that Phoenix knew that Erickson had been involved in a prior aviation accident and that any representations in his application to the contrary were false.  *Cf. Hoffman*, 814 F. Supp. at 788 (concluding that insurer had actual knowledge of true facts where information was in insurer's files).  For present purposes, Old Republic does not dispute that, as Phoenix's principal, it is charged with Phoenix's knowledge.  Thus, viewing the record in the light most favorable to Defendants, a reasonable factfinder could conclude that Old Republic knew of the true facts regarding Erickson's accident

history.  Accordingly, a reasonable factfinder could conclude that Old Republic did not rely on Erickson's alleged misrepresentations and that the misrepresentations therefore were not material.  *Cf. Hoffman*, 814 F. Supp. at 788.  As a result, the Court denies Old Republic's motion for summary judgment.  Having denied Old Republic's motion on the ground that a reasonable factfinder could conclude that Erickson's alleged misrepresentations were not material, the Court need not address Defendants' alternative arguments in opposition to Old Republic's motion.

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1.      Old Republic's Motion for Summary Judgment [Docket No. 13] is DENIED.

Dated:  December 21, 2005

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge